## Lumaghi Coal Company v. William J. Grenard.

ASSUMED RISK—*when doctrine of, applies.* Where a servant knowing the danger which confronts him in the doing of a particular act, voluntarily exposes himself to such danger and does such act, he cannot recover.

Action in case for personal injuries. Appeal from the Circuit Court of St. Clair County; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the August term, 1906. Reversed, with finding of facts. Opinion filed March 15, 1907.

WISE & MCNULTY, for appellant; C. P. ELLERBE and L. R. BROKAW, of counsel

WEBB & WEBB, for appellee.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of St.

Clair county, by appellee against appellant, to recover for a personal injury sustained by appellee while in the service of appellant as a coal miner, in appellant's coal mine. Trial by jury. Verdict and judgment in favor of appellee for $5,500.

The declaration in this case consisted of two counts, but at the close of appellee's evidence the trial court excluded the second count from the consideration of the jury, and the case was submitted to the jury on the first count only. No exceptions were taken to this ruling of the court, so the case is before us as it was before the jury, on the first count only. This count is correctly and fairly abstracted as follows:

"The declaration contains two counts. The first count alleges that the Lumaghi Coal Company on the 15th of December, 1904, was the owner of and operating a coal mine in Madison county, Illinois, and by its servants and agents was engaged in mining and removing coal therefrom. That in said mine were certain entries, rooms and cross-cuts, and coal cars and tracks used for mining coal in said mine. That said company had a servant designated as 'pit boss,' who had charge and control of the underground workings of said mine, who had full power and authority to control the mine and direct the men how, when and where to work in said mine; that said company had in said mine certain servants called 'timbermen', whose duties were to secure and keep from falling down slate and other substances in the roof of the entries, rooms and cross-cuts by cross-bars or timbers, when requested by the miners engaged in such places or when ordered to do so by the pit boss.

"Plaintiff avers that on the day aforesaid he was in the employ of the defendant as a coal miner in said mine and engaged in mining coal in a cross-cut on the north side of said mine, leading from the main north entry eastwardly towards a certain 'blind entry'; that on the 12th day of December, 1904, he discovered a lot of slate and other material overhanging the roof in said cross-cut, which was unsafe and dangerous and likely to fall, and at a place in said cross-cut where plaintiff's duties required him to pass while engaged in and going to and from his work, and where it

was the duty of the timbermen to erect and construct cross-bars when requested as aforesaid; that he requested the timbermen to put up cross-bars and timbers to hold up said slate and other material, and they failed to do so; that on the 12th and 13th of December he complained to the pit boss in said mine and called his attention to the condition of the slate and other material and requested him to have the timbermen secure the same with cross-bars, and the pit boss promised the plaintiff that he would have the timbermen secure said slate and other material, by the erection and construction of cross-bars and ordered and directed the plaintiff to continue working and mining coal in said cross-cut until said place was so secured.

"Plaintiff avers that notwithstanding his request to the timbermen and the promise of the pit boss the said slate and other material, was carelessly and negligently allowed to remain unprotected and unsecured by the erection and construction of cross-bars aforesaid; that while plaintiff was working in said cross-cuts in the discharge of his duties and in the exercise of due care for his own safety, and while relying on the promise of the pit boss that the said slate would be secured, a lot of said slate and other material fell from the roof of said cross-cut upon the plaintiff, greatly injuring, wounding and bruising his body and permanently injuring him."

Appellee was an experienced coal miner, and one of a gang, consisting of four or five men, employed by appellant in a portion of its mine in which was located a main north entry and a parallel entry called a blind entry. To connect these two entries a cross-cut was being driven, and at the time appellee was injured had been driven about forty or fifty feet, starting from the main entry. During that time appellant had two men in its employ, whose special duties were to put up cross-bars in all working places in the mine where needed, and it was the duty of the mine manager to send them to do this work when his attention was called to such necessity. These timbermen had previously put up a cross-bar in the cross-cut, about twenty feet back from the working face. On the morning of December 13, 1904, ap-

pellee went into the cross-cut to look at the place before
commencing his work in the main entry, and while there
discovered that for a space of two or three feet from the
cross-bar, towards the face, the roof was drawn a little and
sounded drummy.    On the morning of the 14th he examined
the place again, finding the conditions substantially the
same, except the "drawn slate" may have extended some
further.    After this, during the same forenoon, appellee and
Solon Whittaker, appellee's buddy, met McKernan, the pit
boss, and in the presence of appellee Whittaker told McKer-
nan they "wanted props and cross-bars for the cross-cut,"
"would like to have some bars put up in the cross-cut, and
also to have some seven foot props sent in there," "wanted
them about twelve feet back where the face was swelling,"
that they "needed several bars in the cross-cut to make it
safe," and that they "needed seven foot props to keep it up
until the timbermen could come in."    To this McKernan
replied that "he would see that they were sent in right
away."    He said, "Go ahead, we will get them in this after-
noon, or to-morrow if the timbermen are busy right now,"
that "he would get them in as soon as he could."    That
evening as they were coming from their work they met Mc-
Kernan again and appellee told him "that he had not sent
any bars or props back to the cross-cut," and that they "had
to have some"; and McKernan said, "I will see you get
them in the morning."

About eight o'clock on the morning of the 15th, appellee
again went into the cross-cut, and finding that no cross-bars
had been put up and no props had been sent in, he again
examined the roof and was uncertain as to the extent to
which the slate was drawn, but thought it extended about
eight feet toward the face from the last cross-bar.    After
this he went to the main entry, did some work there, and
about fifteen minutes before ten o'clock he returned to the
cross-cut, examined the roof again and "discovered a little
shell of coal two or three inches, hanging from the roof
about twelve feet back from the face and picked that down
with his pick."    The roof from the face to the last cross-

Coal Co. v. Grenard.

bar was composed of slate and its surface was slick and even, without any crank or break in it, but it "was kind of drummy and drawing a little." He was "unsettled just what to do," but after looking around, "concluded that if he had timbers he could probably take some of the weight off of the place," and with that purpose in view he went to another part of the mine and brought two props. He set one of these about eight feet from the cross-bar towards the face, and about one foot to the right of the track, and he and one of the men composing the gang were in the act of raising the other to a position opposite the one that had been set, when a portion of the roof fell upon him and quite seriously and to some extent at least permanently injured him.

At the time appellee was injured he had voluntarily gone to another part of the mine and obtained the same kind of props that he and his buddy had ordered the day before, and was in the act of using them in the same place, in the same manner and for the same purpose that they had ordered them at the time they told the pit boss they "needed props to keep it up until the timbermen could come in," and put up the cross-bars. In attempting to set the props, under the undisputed facts of this case, appellee assumed all the risk and danger incident thereto, and this record discloses no grounds upon which a recovery can be based. The trial court erred in refusing to direct a verdict in favor of appellant.

The judgment of the Circuit Court of St. Clair county is reversed, and we find as ultimate facts to be incorporated in the judgment, that the injuries complained of in this case were received by appellee as a result of risks and dangers incident to the business in which he was at the time engaged and which were voluntarily assumed by him.

*Reversed.*